UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JIMMY ALEXANDER MANCERA,

        Petitioner,

        v.                                   Case No. 16-CV-89

RODNEY KREITZMAN, Jail Administrator,
Dodge County Detention Center,

        Respondent.

---

## DECISION AND ORDER

---

Petitioner Jimmy Alexander Mancera, a Colombian citizen subject to a final order of removal and currently detained at the Dodge County Detention Center pending actual removal, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner alleges his continued detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. He seeks a writ ordering his immediate release or alternatively ordering the provision of a bond hearing in which the U.S. Department of Homeland Security bears the burden of showing his continued detention is justified because he is a flight risk or danger to the community. For the reasons below, the petition will be denied.

## BACKGROUND

Now age 35 or 36, Petitioner was residing in Madison, Wisconsin before he was arrested by agents of the U.S. Drug Enforcement Agency on April 30, 2014. He was transferred to the custody

of the Department of Homeland Security (DHS) and served with a notice of intent to issue a final administrative order of removal on May 7, 2014. A Final Administrative Removal Order was issued on June 17, 2014, finding Petitioner deportable and ordering him removed from the United States to his home country of Colombia. Pet. Ex. A, ECF No. 1-4. Petitioner was found deportable based on prior convictions in Wisconsin for perjury in 1998 and possession of a firearm by a felon in 2001, each of which qualifies as an "aggravated felony" subjecting him to deportation. 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1101(43)(E), (S). The State of Wisconsin also brought drug charges against Petitioner in late May 2014 but those charges were later dismissed on the State's motion in February 2015, at which time Petitioner's immigration case was on its first appeal to the Board of Immigration Appeals.

After the removal order was issued, Petitioner filed applications for withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3), and for protection from removal under the Convention Against Torture, 8 C.F.R. § 1208.16(c). The former provides in relevant part that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." § 1231(b)(3)(A). The latter, consistent with the United States' obligations under international law, prohibits removal of an alien to a country in which the alien has shown he is "more likely than not" to be tortured if removed. § 1208.16(c)(2). Petitioner's claim for withholding and protection were rejected by an Immigration Judge in November 2014 and by the Board of Immigration Appeals (BIA) in April 2015. Petitioner then filed a motion to re-open his case due to ineffective assistance of counsel, and the motion was granted by the BIA on June 15, 2015.

Petitioner's case was remanded to an Immigration Judge for further proceedings, and following merits hearings on September 3, October 1, and October 26, 2015, Immigration Judge Virginia Perez-Guzman issued a decision on December 15, 2015 denying Petitioner's applications for withholding and protection. Pet. Ex. H, ECF No. 1-11. Petitioner thereafter timely file a notice of appeal and his case is again pending before the BIA. If the BIA affirms, Petitioner may seek judicial review before the U.S. Court of Appeals for the Seventh Circuit.

Petitioner filed this habeas petition on January 22, 2016, shortly after filing the notice of appeal to the BIA. As of that date Petitioner had been in civil immigration detention for more than 20 months. By now he has been so detained for more than 23 months and he has been detained for more than 21 months since the issuance of the Final Administrative Removal Order.

Petitioner initially asserted four claims for relief: (1) the no-bail detention provision of INA § 236(c), 8 U.S.C. § 1226(c), does not apply to Petitioner's detention because he was not taken into DHS custody "when . . . released" from prison for the convictions that render him deportable (*see Castaneda v. Souza*, 810 F.3d 15 (1st Cir. 2015) (en banc)); (2) his continued detention is not authorized by § 1226(c) because he has been detained beyond the "brief period necessary" to complete removal proceedings (*see Demore v. Kim*, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015)); (3) his continued detention violates his "procedural due process" rights; and (4) his continued detention violates his "substantive due process" rights. Pet. ¶ 38 *et seq*. After the government filed a response in which it argued Petitioner's detention was lawful under INA § 241(a), 8 U.S.C. § 1231(a), and the Supreme Court's decision interpreting that provision in *Zadvydas v. Davis*, 533 U.S. 671 (2001), Petitioner filed a combined reply memorandum/motion for leave to amend the petition in which he argued his

3

continued detention is *not* authorized under § 1231(a) as construed in *Zadvydas* and in which he sought leave to amend the petition to add "claims for relief" to that effect. *See* ECF No. 8 at 3.

**LEGAL STANDARD**

A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In determining whether to grant such relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. §§ 2246–2247. No evidentiary hearing is required where the petition and response present only issues of law. § 2243.

**ANALYSIS**

Civil immigration detention of aliens pending a decision on whether the alien is to be removed from the United States is governed by 8 U.S.C. § 1226. The statute provides "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" and that pending such decision, except as provided under subsection (c), the alien may be detained or released on bond or conditional parole. § 1226(a). Section 1226(c) states that the Attorney General "shall" take into custody any alien who is inadmissible or deportable because of certain criminal convictions when the alien is released from serving a sentence of incarceration. Petitioner's original statutory argument was that his detention was not authorized under § 1226(c) because he was not taken into custody "when . . . released" from prison in 2004 in relation to his underlying convictions, but years later after he was arrested apparently in relation to the since-dismissed drug charges. He also urged the Court to read an implicit reasonable time limit into the

4

mandatory detention provision of § 1226(c) based on the notion that reading the statute literally as mandating detention without any such time limit would raise serious constitutional questions because the statute would effectively authorize indefinite detention.

As the government correctly notes, however, detention of aliens who have been ordered removed is governed by § 1231, not § 1226(c). *See Zadvydas*, 533 U.S. at 683. Section 1231(a) provides for mandatory detention of aliens ordered removed during a 90-day "removal period," that begins when the removal process becomes final. 8 U.S.C. § 1231(a)(1)(A)–(B), (a)(2). That has occurred here. Petitioner was ordered removed pursuant to a Final Administrative Removal Order issued under 8 U.S.C. § 1228(b) on June 17, 2014. Pet. Ex. A. Section 1228(b) authorizes expedited removal proceedings for non-permanent resident aliens deportable for having committed an aggravated felony. § 1228(b)(1)–(2). As the name suggests, a Final Administrative Removal Order is administratively final when issued because there is no BIA review of such an order—instead, an alien subject to such an order may seek immediate judicial review of the order under § 1252. § 1228(b)(3). Petitioner did not seek judicial review of his removal order and therefore the "removal period" began to run under § 1231(a)(1)(B)(i) as of the date the order was issued: June 17, 2014.

The question is whether continued detention some 22 months later is lawful. Section 1231(a)(2) mandates detention during the removal period, but this 90-day period for Petitioner would have expired in September 2014. Section 1231(a)(6) authorizes detention beyond the removal period of one in Petitioner's position (such alien "*may be detained beyond the removal period* and, if released, shall be subject to the terms of supervision" specified elsewhere in the statute), but § 1231(a)(6) is subject to the Supreme Court's decision in *Zadvydas*. *Zadvydas* involved challenges to § 1231(a)(6) by aliens ordered removed but not actually removed given the

5

lack of any country willing to accept them or the lack of an extradition treaty or repatriation agreement with the would-be receiving country. 533 U.S. at 684. The aliens argued the government would never be able to remove them and they therefore would be permanently confined in civil immigration detention, which would violate due process. *Id.* at 685–86. The Court first noted that the general habeas statute, 28 U.S.C. § 2241, confers jurisdiction on federal courts to decide statutory and constitutional challenges to post-removal-period detention. *Id.* at 688. On the merits, the Court noted that § 1231(a)(6) contained no explicit time limit on detention following the 90-day removal period, but based on the premise that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Court construed the statute as implicitly limiting an alien's post-removal-period detention "to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 690. For the sake of uniform administration in federal courts, the Court also adopted a 6-month period in which post-removal-order detention is presumptively reasonable. *Id.* at 701. "After this 6–month period," the Court concluded, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. . . . This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, *an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.*" *Id.* (emphasis mine).

In this case, the only reasons Petitioner has provided to believe there is "no significant likelihood of removal in the reasonably foreseeable future" is that he claims to have a "strong argument that he is entitled to withholding of removal" and he notes "there is no clear date by which

6

his appeal before the Board of Immigration and subsequent judicial review will come to an end."
ECF No. 8 at 13. The fact that there is no clear date by which BIA and if necessary judicial review
of his case will end makes his detention indeterminate but not necessarily "indefinite" in the sense
of the word as used in *Zadvydas*—every case of civil immigration detention in which an appeal is
taken lacks an ascertainable end date.

The strength of Petitioner's argument for withholding is difficult for this Court to assess,
given that Petitioner states only that his argument is "strong" without further elaboration on the
underlying issues. It is also difficult to assess because this Court is not accustomed to deciding
(indeed is powerless to decide) such issues under immigration law. But in any event, a review of the
decision he appeals from shows he asserted four grounds for withholding under § 1231(b)(3): he
claimed to have a well-founded fear of future persecution in Colombia on account of (1) his
membership in the Mancera family because his father was a political enemy of the Revolutionary
Armed Forced of Colombia before the family came to the United States in the early 1990s, (2) his
membership in the social group consisting of Colombian nationals who lived for a long period of time
in the United States and who have family ties to the United States, (3) his conservative political
opinion or imputed political opinion, and (4) his afro-Colombian race. Pet. Ex. H at 2. Additionally,
under the Convention Against Torture he claimed fear that political enemies of his father's, criminal
organizations, or corrupt law enforcement officials will extort, kidnap or kill him if returned to
Colombia. *Id.* at 19. Although the Immigration Judge found Petitioner a credible witness, she
nonetheless concluded Petitioner was statutorily barred from withholding of removal under
§ 1231(b)(3) because he had been "convicted by a final judgment of a particularly serious crime";
alternatively, that he failed to establish a meritorious claim for withholding; and finally that Petitioner

did not meet his burden to establish eligibility for protection under the Convention Against Torture. *Id.* at 13, 22. Among other things the Immigration Judge reasoned that Petitioner did not show past persecution or torture, nor specific evidence that he would be singled out for torture, nor why, if he was deported, he could not simply avoid living in the area of Colombia he was originally from (and where some of his family members had been threatened or attacked) to avoid the claimed risk of harm. *Id.* at 19–20.

Ultimately, it is not for this Court to decide whether this decision was correct. It is noteworthy, however, that Petitioner's applications have been rejected before Immigration Judges and the BIA on three separate occasions so far. Although two of those decisions are tainted to some extent by the finding of ineffective assistance of counsel (the precise grounds for which are not clear), the point is simply that this is not a case in which a detainee has been granted withholding by an Immigration Judge and is nonetheless detained pending an appeal by the government. *Cf. Nadarajah v. Gonzalez*, 443 F.3d 1069, 1071, 1080 (9th Cir. 2006) (issuing writ where alien had been detained going on 5 years and had prevailed at every administrative level of review, including asylum twice and protection under the Convention Against Torture once).

The main problem with Petitioner's habeas claim is that there has been no showing that Colombia refuses to accept Petitioner or United States deportees in general. The detention in *Zadvydas* was deemed potentially "indefinite" because the United States had been unable to find a country willing to receive the detainees. The constitutional problem with such detention derived from the fact that where removal was no longer practically attainable, continued detention is divorced from the legitimate purpose of civil immigration detention that is to facilitate removal. *Id.* at 690; *Demore*, 538 U.S. at 527 (discussing *Zadvydas*). As Justice Kennedy explained in his

concurrence in *Demore*, the basic Due Process Clause protection against arbitrary deprivations of liberty may necessitate inquiry where an unreasonable delay by the government in pursuing or completing deportation proceedings raises the inference that the detention is not for the legitimate purpose of facilitating deportation but for improper reasons such as punishing the detainee. 538 U.S. at 532 (Kennedy, J., concurring). In this case, there is no suggestion in the record that the government delayed, much less delayed for improper reasons. Indeed, Petitioner was ordered removed within weeks of his transfer into DHS custody. And although the withholding-only proceedings—initially, on appeal, on remand, and now again on appeal—have taken a significant amount of time, this is simply not a case in which removal is "no longer practically attainable" as in *Zadvydas*. For that reason, the government continues to lawfully detain Petitioner for the purpose of facilitating his removal.

In sum, I cannot conclude there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future based solely on Petitioner's conclusory assertion that he has a "good argument" on appeal but that it is unknown when his appeal will be decided. Therefore, Petitioner's continued detention is authorized under § 1231(a)(6) as construed by the Supreme Court in *Zadvydas*.

## CONCLUSION

The petition for a writ of habeas corpus is denied. The motion for leave to amend is denied because amendment of the petition would be futile as the Court's discussion of Petitioner's proposed amended claims demonstrates.

9

The Clerk is directed to enter judgment of dismissal of this action forthwith and Certificate of Appealability shall issue.

**SO ORDERED** this   29th   day of March, 2016.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
